**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ANAHEIM GARDENS, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant. ) | No. 93-655C <br> (Judge Tapp) |

**SUPPLEMENTAL JOINT STATUS REPORT**

Pursuant to the Court's August 5, 2025 Order (the "Order," ECF No. 853), the parties respectfully provide the following supplemental joint status report addressing the issues related to retaining a non-testifying technical advisor to assist the Court in addressing "complex issues" that may arise in connection with "a trial for all remaining claims." *Id*. The parties are of the view that a technical advisor may be appointed if there is an issue or issues of technical complexity and appropriate guidelines are in place to safeguard the judicial process and the Court from undue influence from the technical advisor. However, as more fully developed below, the parties cannot fully respond to the Court's Order, as they require additional information.

In response to the Order, the parties provide the following Supplemental Joint Status Report:

1. The Court has the power to appoint a non-testifying technical advisor "when desirable and necessary." *TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1378 (Fed. Cir. 2002). "A technical advisor is helpful in assisting the court in understanding the scientific and technical evidence it must consider." *Id*. at 1377. At the same time, the power to appoint a

technical advisor is not limitless. In *TechSearch*, the Federal Circuit explained that "in those limited cases where the scientific complexity of the technology is such that the district court may require the assistance of a technical advisor to aid in understanding the complex technology underlying the patent, it has the inherent authority to appoint such an advisor." *Id*. at 1378. Nevertheless, the Federal Circuit explained that "[i]t also implicitly recognized that district courts should use this inherent authority sparingly and then only in exceptionally technically complicated cases." *Id*.

2. *TechSearch* was a patent case and involved an infringement determination that involved "'a highly technical case far beyond the boundaries of the normal questions of fact and law with which judges routinely grapple.'" *Id*. at 1379-80. It is not apparent to the parties that the exceptionally technical issues that justified appointing a technical advisor in *TechSearch* exist here. Thus, the parties need guidance from the Court as to which specific technical issues it would have the technical advisor advise it on before they can provide a complete explanation of their positions regarding the appointment of a technical advisor.

3. Given that appointing a technical advisor "should be reserved for the exceptional case," *id*. at 1379, the Court should provide additional details about the role a technical advisor would serve, so the parties can provide more useful comments about whether this is a case where a technical advisor should be appointed.

4. In addition to providing specificity about the technical issues about which it intends to consult with the technical expert, the parties believe, as the *TechSearch* court concluded, that the Court must adopt specific guidelines that ensure that the technical advisor's role is limited to a tutoring function and providing technical education to the court. The purpose of such

guidelines is to "safeguard[] the judicial process and the [trial] court from undue influence by the technical advisor…." *Id*. at 1378.

    5. *TechSearch* identifies guidelines that the trial court adopted to ensure that the role of the technical advisor did not adversely impact the judicial process. The approved guidelines required the trial court to (1) use a "fair and open procedure" to appoint a neutral technical advisor, (2) address any allegations of "bias, partiality or lack of qualifications" of the proposed technical advisor, (3) clearly define and limit the technical advisor's duties through a written disclosure to the parties, (4) "guard against extra-record information," and (5) "make explicit," with "a report or record, the nature and content of the technical advisor's tutelage" concerning the technical issues. *Id.* at 1379 (internal quotation marks and citations omitted). These guidelines apply equally here. The parties are of the view that the Court must provide similar guidelines that would govern the use of any technical advisory in this case before they can fully respond to the Court's request for input on the proposed appointment of a technical advisor. *See Reilly v. United States*, 863 F.2d 149, 160 (1988) ("We do not regard such matters as mere ritual; in an appropriate case, we would not hesitate to reverse if procedural safeguards were wholly inadequate.").

    6. In addition, the parties also request clarification of several other questions relating to the technical advisor.

    i. Will the parties be notified of the potential advisor's identity and have an opportunity to interview advisor candidates prior to his or her appointment?

    ii. Will the advisor provide a formal report or other written work product to the Court, and, if so, will the parties have an opportunity to question the technical advisor about that work product and provide any objections to the Court?

Upon receiving additional information from the Court related to the aforementioned guidelines, the parties respectfully reserve the right to review and object to the guidelines and their implementation. *See id.* at 159 (finding advisable "that the parties be notified of the expert's identity before the court makes the appointment, and be given an opportunity to object"). At a minimum, the parties believe that they should be afforded the opportunity to learn of – and potentially object to – the potential advisor's identity and scope of the potential advisor's work, obtain a report from the advisor containing the advisor's conclusions provided to the Court, question the advisor regarding these conclusions, and respond and potentially object to the advisor's conclusions. *See Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1393 (D. Or. 1996) (explaining procedure in which court-appointed technical advisors submitted reports to the court and the court gave counsel for both parties an opportunity to question the advisors).

7. The parties also request clarity about who would pay for the services of a technical advisor. The parties are extremely concerned about adding to the already substantial costs of preparing and presenting their cases at trial. If the parties will be required to pay some or all of the costs of a technical advisor for the Court, they need more information about the allocation of costs and the anticipated scope of the technical advisor's involvement at trial and post-trial.

8. The Federal Circuit warned that "there is a risk that some of the judicial decision-making function will be delegated to the technical advisor." *TechSearch*, 286 F.3d at 1379. As a result, "judges need to be extremely sensitive to this risk and minimize the potential for its occurrence." *Id.* Based on the limited information provided by the Court, the parties have provided general comments about appointing a technical advisor. The parties request that the

Court provide additional guidance concerning the appointment of a technical advisor, so they can provide more detailed and helpful comments to the Court.[1]

---

[1] The comments provided in this Joint Status Report are based on information available to the parties at present. Nothing stated in this Joint Status Report should be construed as waiving any objections to the terms ultimately adopted with respect to a technical advisor, including, without limitation, the selection of the technical advisor, the scope of the advisor's duties, and the format and content of the advisor's work product.

|  |  |
|---|---|
|  | Respectfully submitted, |
| s/ Harry J. Kelly<br>Harry J. Kelly<br>NIXON PEABODY LLP<br>799 9th Street N.W., Suite 500<br>Washington, D.C. 20001<br>(202) 585-8000<br>hkelly@nixonpeabody.com<br><br>Attorneys for Plaintiffs | BRETT A. SHUMATE<br>Assistant Attorney General<br><br>PATRICIA M. McCARTHY<br>Director<br><br>s/ Franklin E. White, Jr.<br>FRANKLIN E. WHITE, JR.<br>Assistant Director<br><br>s/ Amanda L. Tantum<br>AMANDA L. TANTUM<br>EMMA E. BOND<br>Senior Trial Counsel<br>A. BONDURANT ELEY<br>Senior Litigation Counsel<br>TATE N. WALKER<br>JOSHUA W. MOORE<br>Trial Attorneys<br>Commercial Litigation Branch<br>Civil Division, Department of Justice<br>P.O. Box 480, Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 616-8131<br>E-mail: amanda.tantum@usdoj.gov<br><br>Attorneys for Defendant |
| August 12, 2025 |  |