IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ANAHEIM GARDENS, *et al.*,      )
                                )
        Plaintiffs,             )
                                )
    v.                          )   No. 93-655C
                                )   (Judge Tapp)
THE UNITED STATES,              )
                                )
        Defendant.              )

**DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION TO REOPEN FACT AND EXPERT DISCOVERY**

Pursuant to Rule 7.2(b) of the Rules of the United States Court of Federal Claims (RCFC), the United States respectfully submits its response to Second Wave Plaintiffs' (SWPs) motion for leave to engage a new economic impact expert. *See* Pl. Mot. for Leave to Engage New Economic Impact Expert (Pl. Mot.), ECF No. 978.

**INTRODUCTION**

A few short weeks ago, in response to the United States's *Daubert* motion, SWPs represented to this Court that the methodologies of their economic impact expert, Dr. Stephen Roulac, "were fully disclosed[,]" that Dr. Roulac "fully documented the choices he made and the conclusions he reached[,]" and that he presented a "well-researched, scientifically validated, and fully-documented analysis of the SWPs' economic losses."  Pl. Resp. to Def. Mot. to Exclude the Expert Testimony of Stephen Roulac at 17, ECF No. 936.  To that end, SWPs insisted that (1) the Government's concerns regarding Dr. Roulac's disclosures amounted to nothing more than "word games," *id.* at 9, (2) "Dr. Roulac Provided Sufficient Guidance and Supporting Information Concerning Search Methodologies, Including Those Derived From DatabaseUSA and ESRI[,]" *id.* at 14, (3) "Dr. Roulac's Use of CoStar Data Was Appropriate and Well-Documented[,]" *id.* at 15, (4) "Dr. Roulac Fully Explained the Square Footage Factor Developed For 100 Centre Plaza[,]"

*id.*, and (5) "Coefficients and Percentages Used In Dr. Roulac's Attributes Analysis Were Derived From Rigorous Scientific Analysis and Appropriate Expert Judgment." *Id.* at 16. SWPs dismissed the United States's "attack" on Dr. Roulac's compliance with Federal disclosure requirements as "unavailing[,]" *id.* at 6, and posited that the Government "recognized the *strength* of Dr. Roulac's opinions and the urgent need to prevent them from being heard by the Court." *Id.* at 17 (emphasis added). Then, when the Court held a *Daubert* hearing, SWPs' counsel offered a full-throated defense of Dr. Roulac's alleged compliance with RCFC 26(a)(2) and Fed. R. Evid. 702.

After the Court communicated its intention to exclude Dr. Roulac's expert opinion under *Daubert*, however, SWPs moved to replace him as their expert, claiming (only three business days before trial) that they were his victims, and revealing that, despite all of their recent assertions to the Court, *they have known all along* that "Dr. Roulac has repeatedly fallen short of what th[e] rules require." Pl. Mot. at 1. SWPs then assert that, even if Dr. Roulac, who is *their own chosen representative*, were to be "permitted to testify in some fashion" at trial, it would be "gravely prejudicial" to them, because he "will not be able to provide expert testimony that will help the Court understand the evidence or determine the facts at issue." *Id.* SWPs propose that the Court reopen a four-month discovery period *during trial* so that they can entirely replace Dr. Roulac and all of his economic impact opinions with a new expert and new opinions. *See id.* at 2.

However, as this Court has explained, "[a] party's realization that it elected to pursue the wrong litigation strategy is not good cause for amending a schedule." *Sys. Fuels, Inc. v. United States,* 111 Fed. Cl. 381, 383 (2013) (citation omitted). For the Court to grant SWPs the bailout that they are requesting – let alone *in the middle of an ongoing trial* – would be incredibly prejudicial to the United States, which has incurred in excess of two million dollars in costs

2

responding to and rebutting Dr. Roulac's shifting opinions. A1-13.[1]  After the United States has conclusively demonstrated the lack of reliability in SWPs' damages model, ECF No. 983 at 22-36, it would constitute an absolute, and quite extraordinary, abuse of discretion to permit SWPs to escape the consequences of their own litigation choices.  Thus, SWPs' request should be denied.

## ARGUMENT

### I.    Applicable Legal Standards

#### A.    The Good Cause Standard for Reopening Discovery Under RCFC 16(b)(4)

Although "[a] trial court has wide discretion in setting the limits of discovery[,]'" *Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002), a court-imposed schedule may be modified "only for good cause and with the judge's consent[,]" RCFC 16(b)(4), considering (1) the reasons for the moving party's failure to comply with the schedule; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a cure for any prejudice. *See Sys. Fuels*, 111 Fed. Cl. at 383.

The "primary consideration" or "threshold inquiry" is whether the moving party can demonstrate diligence.  *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1319 (Fed. Cir. 2013); *Adv. Software Design Corp. v. Fiserv, Inc.,* 641 F.3d 1368, 1381 (Fed. Cir. 2011).  A party's "recent concern that their case may have evidentiary shortcomings" does not provide the necessary justification for re-opening discovery.  *See Sys. Fuels*, 111 Fed. Cl. at 383.

Prejudice to the opposing party is also an important consideration.  The forms of prejudice that the law recognizes include: (1) delaying the proceedings, and (2) creating a need for the non-moving party to investigate the new expert's assertions and possibly hire its own new expert.  *See,*

---

[1]  "A___" is a reference to the appendix filed with this motion.

*e.g., Marine Indus. Constr. v. United States,* 151 Fed. Cl. 349, 371 (2020), *Sys. Fuels*, 111 Fed. Cl. at 384.  Indeed, "[c]ompelling a party with 'clean hands' to incur significant additional expense and spend a large amount of additional time in discovery when the opposing side has not acted with diligence and has not shown 'good cause' is simply unwarranted." *Dag Enterprises, Inc. v. Exxon Mobil Corp.,* 226 F.R.D. 95, 110 (D.D.C. 2005).

<b>B.    <u>Legal Standards Related to The Supplementation Of Expert Reports</u></b>

Importantly, this Court's Rules do not provide a mechanism for the abandonment of an expert disclosure after it has been made.  At most, a party may make a supplemental disclosure "if [a] party learns that in some material respect the information disclosed is incomplete[.]"  RCFC 26(e).[2]  Even then, supplementation is limited to "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time."  *Dag Enters.,* 226 F.R.D. at 109 (citations omitted).  A party's "obligation to supplement [its] expert reports does not give them the right to ignore the Court's deadline, reopen discovery, find 'new facts,' generate new expert reports, and then claim different damages."  *Id.*

Moreover, late supplementation on the eve of trial is contrary to the rules of this Court. RCFC 26(e)(2) bars supplementation of expert reports after the exchange of pre-trial disclosures. *See Cohen v. United States*, 100 Fed. Cl. 461, 468 & n.2 (2011) (explaining that "Rule 26(a)(3) . . . refers to the requirements of Appendix A, Case Management Procedure, ¶¶ 13, 15, and 16").

Against this background, the issuance of new expert reports is generally forbidden.  *See, e.g., Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.,* No. C-06-1066-PJH-EMC, 2008

---

[2] "In general, the rules of [the United States Court of Federal Claims] are closely patterned on the Federal Rules of Civil Procedure.  Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this court[.]"  *Champagne v. United States*, 35 Fed. Cl. 198, 205 n.5 (1996).

WL 4601038, at *1 (N.D. Cal. Oct. 15, 2008) (unpublished) ("A party may not rely on Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report."); *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D. N.C. 2002) (holding Rule 26(e) supplementation "does not cover failures of omission because the expert did an inadequate or incomplete preparation"); *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998) (holding supplemental disclosures "are not intended to provide an extension of the expert designation and report production deadline").

Even more significantly, a party is not permitted to submit a new expert report as a hedge against a pending *Daubert* motion. *See Medimpact Healthcare Sys., Inc. v. IQVIA Inc.*, No. 19-cv-1865-GPC (DEB), 2022 WL 15524594 , at *2 (S.D. Cal. Oct. 27, 2022) (unpublished) (concluding that the new opinions in an expert's supplemental report appeared "to be a belated attempt to: (1) bolster [the expert's] original expert report . . . and deposition testimony . . . and (2) hedge against Plaintiffs' *Daubert* motion," which were not "permissible uses of Rule 26(e)"); *Poole v. Milwaukee Elec. Tool Corp.*, No. CIV-05-950-D, 2007 WL 7024595, at *1-*3 (W.D. Okla. Sept. 28, 2007) (unpublished) (striking a new expert report, issued after opposing party's *Daubert* motion, and noting that "[b]y the time [the] new report was received, Defendant had made its own expert disclosures, had completed [the expert's] deposition and all discovery [with two exceptions], had filed a *Daubert* motion concerning his opinions, and was approximately two weeks away from filing a dispositive motion"); *Gilbane Bldg. Co. v. Downers Grove Commty. High Sch. Dist. No. 99,* No. 02 C 2260, 2005 WL 838679, at *5, *8-*9 (N.D. Ill., Apr. 5, 2005) (unpublished) (precluding submission of "additional information, prepared by a different expert, to bolster the original Expert Report," in response to a *Daubert* motion); *cf. also Gallagher v. Southern Source Pkg., LLC*, 568 F. Supp. 2d 624, 629-33 (E.D.N.C. 2008) (precluding admission

of a new expert report created to stave off summary judgment motion based upon criticisms of original expert report that sounded in *Daubert*).  The one opinion to suggest otherwise is wrongly decided, contrary to the weight of case law, and, in any event, did not legitimize the reopening of expert discovery in the middle of trial, or after the Court had already announced its *Daubert* ruling. *See generally Ingham Reg. Med. Ctr. v. United States*, 169 Fed. Cl. 12, 29-32 (2024).

**II.    SWPs Cannot Make The Requisite Showing Of Diligence**

SWPs urge that their counsel were diligent in attempting to secure Dr. Roulac's compliance with RCFC 26(a)(2) and Fed. R. Evid. 702, and suggest recent surprise at Dr. Roulac's performance.  Pl. Mot. at 1, 5.  These claims are inaccurate.

Dr. Roulac's significant disclosure deficiencies were apparent in February of this year, when those deficiencies placed United States in the unusual position of seeking a stay of the parties' rebuttal report deadline.  *See* ECF No. 874.  While the motion for a stay was pending, the United States had to issue a rebuttal report that contained a limitations section, detailing the missing information and how it precluded meaningful review.  A15-22.  After a hearing, the Court took the extraordinary step of establishing a definitive due date for Dr. Roulac to produce missing materials, ECF No. 877, and in mid-March the United States reached out to SWPs' counsel after its inventory of that production revealed even more problems.  ECF Nos. 885 & 885-1.  This gave rise to yet another deadline for SWPs to attempt to complete Dr. Roulac's disclosure.  ECF No. 896.

Yet SWPs – who understood the importance of the economic impact testimony in this case — ultimately decided as a matter of litigation strategy to proceed with Dr. Roulac as their expert. Then, SWPs chose, when confronted with the United States's motion to exclude Dr. Roulac's opinions, to contend vociferously to this Court that Dr. Roulac had complied with RCFC 26(a)(2) and Fed. R. Evid. 702, *see generally* ECF No. 936, *when they knew otherwise.  See* Pl. Mot. at 1

("[I]n spite of the fact that SWPs repeatedly explained to Dr. Roulac, orally and in writing, what his obligations are under Rules 26 and 37, Dr. Roulac has repeatedly fallen short of what the Rules require."). SWPs have relented in this position only upon learning that their gambit to persuade the Court to allow Dr. Roulac to testify at trial has failed. *This is gamesmanship, not diligence.*

Indeed, there is no similarity between SWPs' circumstances and those under which the United States requested an enlargement of discovery in 2016 to replace one of its experts. *See* Pl. Mot. at 5. The United States self-identified the problems, and sought relief 21 days *before* the close of discovery, *see* ECF No. 398 at 1, with the Court enlarging the expert discovery deadline not only because "[t]he problems defendant encountered with [the expert] were uncharacteristic for him, based on his past experience[,]" but also because the United States's request had *not* "come after the close of discovery, after the production of initial expert reports, and after additional discovery based on already-produced expert reports." *Id.* at 6.

Nor are SWPs's circumstances analogous to those in *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247 (10th Cir. 2011). In that case, the Tenth Circuit reversed a trial court ruling denying a plaintiff's motion to replace its expert after that expert was excluded under *Daubert*. The Tenth Circuit based its decision on "unique circumstances" that justified a deviation from the rule that "[i]n the normal course of events, district courts are *well within permissible discretion* to deny the opportunity to name a new expert after discovery has closed and a party receives an unfavorable *Daubert* ruling." *Id.* at 1255 (emphasis added). *Rimbert* involved a highly unusual circumstance where the plaintiff did not seek to replace its expert because he had initially *prevailed* in the face of a *Daubert* challenge, but the case was subsequently reassigned to different judge who reversed the initial *Daubert* ruling. *See id.* at 1250-51, 1256. In addition to noting that the plaintiff's reliance on his expert was reasonable in light of his initial victory, the appeals court determined that "the

7

single most important fact" supporting the reopening of discovery in that case was "that, at the time [the request] was made, there was no longer any impending trial date or pretrial schedule remaining.  That schedule had been completely vacated." *Id.* at 1254.  In stark contrast, SWPs have long understood Dr. Roulac's deficiencies, but knowingly adopted the high-risk strategy of attempting to present him as a viable witness nonetheless.  Moreover, here *trial begins in two days.*

As this Court has stated, "[a] party's realization that it elected to pursue the wrong litigation strategy is not good cause for amending a schedule." *Sys. Fuels,* 111 Fed. Cl. at 383.  Although SWPs complain that proceeding without an economic expert is "tantamount to a dismissal," Pl. Mot. at 4, the principle that parties should be held to the consequences of their litigation decisions holds true regardless of the importance of the issue at stake.  *See, e.g., Marine Indus.*, 151 Fed. Cl. at 369-70 (failure to meet expert disclosure deadline not excused by counsel's legally incorrect belief that he could introduce the witness' testimony as lay testimony under Fed. R. Evid. 701), *Dag Enters.*, 226 F.R.D. at 106-07 (finding a lack of diligence where a party "did not regard information about the post-divestiture financial performance . . . as particularly relevant," and did not pursue it in discovery, although it was "certainly reasonably foreseeable that if this case goes to trial, the calculation of damages will be a crucial issue, and such a calculation would necessarily rely on Plaintiffs' projected profit margins"); *Eichorn v. AT&T Corp.,* 484 F.3d 644, 648-49, 651 (3d Cir. 2007) (upholding trial court ruling to deny plaintiffs' request for leave to designate an expert seven months after a reopened period of discovery, given that plaintiffs had previously "insisted that no expert testimony was necessary").  Again, a party's "recent concern that their case may have evidentiary shortcomings" does not provide the necessary justification for re-opening discovery.  *See Sys. Fuels*, 111 Fed. Cl. at 383.

8

In light of the foregoing circumstances, diligence – the "primary consideration" in determining whether good cause exists to reopen discovery, *High Point*, 730 F.3d at 1319 – is absent here. Rather, plaintiffs' difficulties are the product of their own choices. Thus, SWPs' motion for leave to designate a new economic impact expert should be denied.

## III.    A Re-Opening Of Expert Discovery Would Overwhelmingly Prejudice The United States, And Cannot Be Cured

As previously noted, "[c]ompelling a party with 'clean hands' to incur significant additional expense and spend a large amount of additional time in discovery when the opposing side has not acted with diligence and has not shown 'good cause' is simply unwarranted." *Dag Enters.,* 226 F.R.D. at 110. Those are undisputably the Government's circumstances, and another reason why plaintiffs' motion should be denied.

SWPs posit that any prejudice to the United States could be obviated with a rebuttal report and a deposition. *See* Pl. Mot. at 6.[3] This is inaccurate. Since February, SWPs and Dr. Roulac have been afforded substantial grace – over and above what is ordinarily afforded a litigant in a Court of Federal Claims proceeding – in support of their attempt to produce a reliable expert disclosure. *See* ECF No. As a result, the United States has incurred in excess of two million dollars in costs in connection with Dr. Roulac's deficient disclosures, issuing two rebuttal reports (rather than just one), deposing Dr. Roulac, and in bringing its own expert to two separate court-

---

[3] SWPs' proposed schedule is far from reasonable or fair to the United States. In addition to requesting that the Court prolong the trial for their benefit, SWPs urge that they be given 120 days to issue a replacement expert report, Pl. Mot. at 2, effectively a one-year enlargement of the original deadline of December 15, 2025. *See* ECF No. 866. SWPs then propose that the United States be ordered to respond *in an expedited fashion,* with only a 45-day period for rebuttal, and only 14 days thereafter to conduct a deposition. This proposed schedule rewards SWPs for their failures, and penalizes the United States for no legitimate reason whatsoever. Even if the Court were inclined to grant scheduling relief (which it should not), this arrangement should be rejected out of hand.

ordered hearings.  A1-13.  Moreover, these SWP-created issues have continuously diverted the United States and its expert team from trial preparations for the trial that now starts in just two days.

Plaintiffs are arguing that, because *they* have failed in their efforts, the United States should incur all these burdens anew, forfeiting the time, effort, and costs expended to date.  However, this circumstance is the kind of incurable prejudice that many courts have recognized in denying requests to reopen discovery.  *See, e.g.*, *Marine Indus.*, 151 Fed. Cl. at 370-71, *Sys. Fuels*, 111 Fed. Cl. at 384, *Dag Enters.*, 226 F.R.D. at 110.  *But see Rimbert*, 647 F.3d at 1255.

Moreover, aside from resources considerations, the United States also stands to incur incurable substantive prejudice.  Permitting plaintiffs to evade the consequences of their decisions, in addition to being completely contrary to law, deprives the parties of a timely resolution of this long-pending matter.  Accordingly, SWPs' motion for leave to designate a new expert should be denied.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for leave to engage a new economic impact expert should be denied.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

<u>s/ Amanda L. Tantum by</u>
<u>s/ A. Bondurant Eley</u>
AMANDA L. TANTUM
Senior Trial Counsel
A. BONDURANT ELEY
Senior Litigation Counsel
Commercial Litigation Branch
Civil Division, Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-8131
E-mail: Amanda.Tantum@usdoj.gov

July 13, 2026                     Attorneys for Defendant

# **<u>APPENDIX</u>**

**INDEX TO APPENDIX OF DOCUMENTS**
**SUBMITTED IN ELECTRONIC FORM TO CHAMBERS**

Document                                                                                           Page

Email, X. Ji to B. Eley, July 13, 2026, and bill excerpts ............................................................A1

Excerpts from First Rebuttal Expert Report of Tim Riddiough,
   February 20, 2026 ................................................................................................................A14

From: Ji, Xinyu
To: Eley, Bondurant (CIV)
Cc: Igor Cerasa
Subject: [EXTERNAL] Spendings related to responding to Dr. Roulac
Date: Monday, July 13, 2026 5:38:36 PM
Attachments: 046643 Analysis Group Invoice 1099199.pdf
046643 Analysis Group Invoice 1101196.pdf
046643 Analysis Group Invoice 1102640.pdf
046643 Analysis Group Invoice 1105264.pdf
046643 Analysis Group Invoice 1107712.pdf
046643.DRAFT INV1109357.EDG.pdf

Hi Bondurant,

I am attaching the 5 invoices submitted by AG for work on Anaheim between November and May, and a draft invoice for the work performed in June (the invoice has not been finalized yet).
As discussed on the phone, we adjusted the November-December 2025 and April-May 2026 invoices to exclude work performed in relation to Tim's affirmative report and deposition. The adjusted amount is $2,167,702.46.

A summary of the total invoiced amounts and the adjusted amounts is provided below.

Please let us know if you have any questions.

Best,
Igor and Xinyu

| Invoice Number | Invoice Date | Date Range | Document | Note | Total Invoiced [A] | Non Roulac-Related Charges [B] | Adjusted Amount [C] = [A] – [B] |
|---|---|---|---|---|---|---|---|
| 1099199 | 1/8/2026 | 11/13/2025 – 12/31/2025 | Original Invoice | Updated amount excludes charges related to Prof. Riddiough's affirmative report. | $ 322,036.50 | $ 193,487.50 | $ 128,549.00 |
| 1101196 | 2/17/2026 | 01/01/2026 – 01/31/2026 | Original Invoice | | $ 368,127.50 | $ - | $ 368,127.50 |
| 1102640 | 3/13/2026 | 02/01/2026 – 02/28/2026 | Original Invoice | | $ 572,199.50 | $ - | $ 572,199.50 |
| 1105264 | 4/30/2026 | 03/01/2026 – 03/01/2026 | Original Invoice | | $ 354,537.00 | $ - | $ 354,537.00 |
| 1107712 | 6/11/2026 | 04/01/2026 – 05/31/2026 | Original Invoice | Updated amount excludes charges related to Prof. Riddiough's deposition. | $ 869,971.37 | $ 170,147.37 | $ 699,824.00 |
| 1109357 | 7/13/2026 | 06/01/2026-06/30/2026 | Draft invoice | Invoice not finalized. Estimate based on prebill. | $ 44,465.46 | $ - | $ 44,465.46 |
| TOTAL | | | | | $ 2,531,337.33 | $ 363,634.87 | $ 2,167,702.46 |

Xinyu Ji | Principal
Analysis Group, Inc.
111 Huntington Avenue, 14th Floor
Boston, MA 02199
617 425 8432 (direct) | 617 834 7170 (mobile)
AnalysisGroup.com

A1

**AG** **ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

January 08, 2026

US DOJ/CIV/OMP/OPBE
PO Box 600 Ben Franklin Station
Washington, DC 20044
opbe.civil@usdoj.gov

| | |
|---|---|
| AG Case No.: | 046643 |
| Invoice No.: | 1099199 |
| Taxpayer ID: | 04-2727260 |
| **Cost Center:** | **0361960306** |
| **Contract No.:** | **15JC1V25P000000545** |

**Re        Anaheim Gardens v. USA**

For professional services rendered in connection with the above referenced case for the period November 13, 2025 to December 31, 2025, including:

- Preparation of and assistance with preparation of expert affirmative report, appendices, and exhibits;
- Finalizing affirmative valuation and economic impact analyses and relevant alternative analyses;
- Review and analysis of Plaintiffs' expert reports and backup materials;
- Review of case documents;
- Assistance with draft expert rebuttal report; and
- Communications with counsel and expert.

Current Billing:

| | | |
|---|---|---|
| Professional Hours | | 440.30 |
| Professional Services | $ | 322,036.50 |
| **Total Due and Payable - Current Billing in USD** | **$** | **322,036.50** |

cc:    Bondurant Eley (Bondurant.Eley@usdoj.gov)
       Thee Matthews (Thee.Matthews@usdoj.gov)

A2

 **ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

January 08, 2026

US DOJ/CIV/OMP/OPBE
PO Box 600 Ben Franklin Station
Washington, DC 20044
opbe.civil@usdoj.gov

| | |
|---|---|
| AG Case No.: | 046643 |
| Invoice No.: | 1099199 |
| Taxpayer ID: | 04-2727260 |
| **Cost Center:** | **0361960306** |
| **Contract No.:** | **15JC1V25P000000545** |

**Re**        **Anaheim Gardens v. USA**

Current Billing:

| | | |
|---|---|---:|
| Professional Hours | | 440.30 |
| Professional Services | $ | 322,036.50 |
| **Total Due and Payable - Current Billing in USD** | **$** | **322,036.50** |

| Remit To: | Wire Instructions: |
|---|---|
| Regular Mail: | Citizens Bank |
| Analysis Group#1 | Routing / ABA No.: 011500120 |
| PO Box 845512 | Account No.: 1130184460 |
| Boston, MA 02284-5512 | Swift Code: CTZIUS33 |
| | |
| Overnight Delivery: | Direct Deposit (EFT or ACH): |
| Analysis Group#1 | Routing / ABA No.:211070175 |
| Attn: Lockbox Operations 845512 | Account No.: 1130184460 |
| 1 Cabot Road, Suite 202 | |
| Medford, MA 02155 | |
| | |
| **Please Send Remittance Email To:** | **Please Send Remittance Email To:** |
| AGReceivables@analysisgroup.com | AGReceivables@analysisgroup.com |

THIS INVOICE IS PAYABLE UPON RECEIPT
PLEASE RETURN THIS PAGE WITH YOUR REMITTANCE

A3

 **ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

February 17, 2026

<mark>**The overnight lockbox address has changed as of February 11, 2026. After this date, any overnight mail must be sent to the new address. Please update your records accordingly.**</mark>

US DOJ/CIV/OMP/OPBE
PO Box 600 Ben Franklin Station
Washington, DC 20044
opbe.civil@usdoj.gov

| | |
|---|---|
| AG Case No.: | 046643 |
| Invoice No.: | 1101196 |
| Taxpayer ID: | 04-2727260 |
| **Cost Center:** | **0361960306** |
| **Contract No.:** | **15JC1V25P000000545** |

**Re        Anaheim Gardens v. USA**

For professional services rendered in connection with the above referenced case for the period January 01, 2026 to January 31, 2026, including:

- Preparation of and assistance with preparation of expert rebuttal report, appendices, and exhibits;
- Review and analysis of Plaintiffs' expert reports and backup materials;
- Development of rebuttal analyses;
- Review of case documents; and
- Communication with counsel and expert.

Current Billing:

| | |
|---|---|
| Professional Hours | 534.25 |
| Professional Services | $ 368,127.50 |
| **Total Due and Payable - Current Billing in USD** | **$ 368,127.50** |

SUMMARY OF PRIOR BILLINGS THAT REMAIN UNPAID

| 0 - 30 Days | 31 - 60 Days | 61 - 90 Days | 91 - 120 Days | Over 120 Days | Total |
|---|---|---|---|---|---|
| $0.00 | $322,036.50 | $0.00 | $0.00 | $0.00 | $322,036.50 |

cc:    Bondurant Eley (Bondurant.Eley@usdoj.gov)
       Thee Matthews (Thee.Matthews@usdoj.gov)

A4



**ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

February 17, 2026

==The overnight lockbox address has changed as of February 11, 2026. After this date, any overnight mail must be sent to the new address. Please update your records accordingly.==

US DOJ/CIV/OMP/OPBE
PO Box 600 Ben Franklin Station
Washington, DC 20044
opbe.civil@usdoj.gov

|  |  |
|---|---|
| AG Case No.: | 046643 |
| Invoice No.: | 1101196 |
| Taxpayer ID: | 04-2727260 |
| **Cost Center:** | **0361960306** |
| **Contract No.:** | **15JC1V25P000000545** |

**Re        Anaheim Gardens v. USA**

Current Billing:

| | |
|---|---|
| Professional Hours | 534.25 |
| Professional Services | $   368,127.50 |
| **Total Due and Payable - Current Billing in USD** | **$   368,127.50** |

| **Remit To:** | **Wire Instructions:** |
|---|---|
| Regular Mail: | Citizens Bank |
| Analysis Group#1 | Routing / ABA No.: 011500120 |
| PO Box 845512 | Account No.: 1130184460 |
| Boston, MA 02284-5512 | Swift Code: CTZIUS33 |
| | |
| Overnight Delivery: | Direct Deposit (EFT or ACH): |
| Analysis Group Inc - 845512 | Routing / ABA No.:211070175 |
| Attn: Lockbox Processing | Account No.: 1130184460 |
| 10 Dan Road | |
| Canton, MA 02021 | |
| | |
| **Please Send Remittance Email To:** | **Please Send Remittance Email To:** |
| AGReceivables@analysisgroup.com | AGReceivables@analysisgroup.com |

THIS INVOICE IS PAYABLE UPON RECEIPT
PLEASE RETURN THIS PAGE WITH YOUR REMITTANCE

 **ANALYSIS GROUP**

<span style="color:#888">Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com</span>

<span style="color:#888">111 Huntington Avenue   14th Floor   Boston, MA   02199</span>

March 13, 2026

<mark>**The overnight lockbox address has changed as of February 11, 2026. After this date, any overnight mail must be sent to the new address. Please update your records accordingly.**</mark>

US DOJ/CIV/OMP/OPBE
PO Box 600 Ben Franklin Station
Washington, DC 20044
opbe.civil@usdoj.gov

| | |
|---|---|
| AG Case No.: | 046643 |
| Invoice No.: | 1102640 |
| Taxpayer ID: | 04-2727260 |
| **Cost Center:** | **0361960306** |
| **Contract No.:** | **15JC1V25P000000545** |

**Re        Anaheim Gardens v. USA**

For professional services rendered in connection with the above referenced case for the period February 01, 2026 to February 28, 2026, including:

- Preparation of and assistance with preparation of expert rebuttal report;
- Review and analysis of Dr. Roulac's revised expert report and backup materials;
- Identification of deficiencies with Dr. Roulac's backup materials;
- Preparation of and assistance with preparation of draft supplemental rebuttal report;
- Development of rebuttal analyses; and
- Communication with counsel and expert.

Current Billing:

| | | |
|---|---|---:|
| Professional Hours | | 864.50 |
| Professional Services | $ | 572,199.50 |
| **Total Due and Payable - Current Billing in USD** | **$** | **572,199.50** |

SUMMARY OF PRIOR BILLINGS THAT REMAIN UNPAID

| 0 - 30 Days | 31 - 60 Days | 61 - 90 Days | 91 - 120 Days | Over 120 Days | Total |
|---|---|---|---|---|---|
| $368,127.50 | $0.00 | $0.00 | $0.00 | $0.00 | $368,127.50 |

cc:    Bondurant Eley (Bondurant.Eley@usdoj.gov)
       Thee Matthews (Thee.Matthews@usdoj.gov)

# AG ANALYSIS GROUP

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

March 13, 2026

**The overnight lockbox address has changed as of February 11, 2026. After this date, any overnight mail must be sent to the new address. Please update your records accordingly.**

US DOJ/CIV/OMP/OPBE
PO Box 600 Ben Franklin Station
Washington, DC 20044
opbe.civil@usdoj.gov

| | |
|---|---|
| AG Case No.: | 046643 |
| Invoice No.: | 1102640 |
| Taxpayer ID: | 04-2727260 |
| **Cost Center:** | **0361960306** |
| **Contract No.:** | **15JC1V25P000000545** |

**Re        Anaheim Gardens v. USA**

Current Billing:

| | |
|---|---:|
| Professional Hours | 864.50 |
| Professional Services | $    572,199.50 |
| **Total Due and Payable - Current Billing in USD** | **$    572,199.50** |

| **Remit To:** | Wire Instructions: |
|---|---|
| Regular Mail: | Citizens Bank |
| Analysis Group#1 | Routing / ABA No.: 011500120 |
| PO Box 845512 | Account No.: 1130184460 |
| Boston, MA 02284-5512 | Swift Code: CTZIUS33 |
| | |
| Overnight Delivery: | Direct Deposit (EFT or ACH): |
| Analysis Group Inc - 845512 | Routing / ABA No.:211070175 |
| Attn: Lockbox Processing | Account No.: 1130184460 |
| 10 Dan Road | |
| Canton, MA 02021 | |
| | |
| **Please Send Remittance Email To:** | **Please Send Remittance Email To:** |
| AGReceivables@analysisgroup.com | AGReceivables@analysisgroup.com |

THIS INVOICE IS PAYABLE UPON RECEIPT
PLEASE RETURN THIS PAGE WITH YOUR REMITTANCE

A7

 **ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

April 30, 2026

<mark>**The overnight lockbox address has changed as of February 11, 2026. After this date, any overnight mail must be sent to the new address. Please update your records accordingly.**</mark>

US DOJ/CIV/OMP/OPBE
PO Box 600 Ben Franklin Station
Washington, DC 20044
opbe.civil@usdoj.gov

| | |
|---|---|
| AG Case No.: | 046643 |
| Invoice No.: | 1105264 |
| Taxpayer ID: | 04-2727260 |
| **Cost Center:** | **0361960306** |
| **Contract No.:** | **15JC1V25P000000545** |

**Re**        <u>**Anaheim Gardens v. USA**</u>

For professional services rendered in connection with the above referenced case for the period March 01, 2026 to March 31, 2026, including:

- Review and analysis of Dr. Roulac's revised expert report and backup materials;
- Identification of deficiencies with Dr. Roulac's backup materials;
- Preparation for April 1 hearing;
- Preparation of and assistance with preparation of expert supplemental rebuttal report;
- Development of rebuttal analyses; and
- Communication with counsel and expert.

<u>Current Billing:</u>

| | | |
|---|---|---|
| Professional Hours | | 504.60 |
| Professional Services | $ | 354,537.00 |
| **Total Due and Payable - Current Billing in USD** | **$** | <u>**354,537.00**</u> |

cc:    Bondurant Eley (Bondurant.Eley@usdoj.gov)
       Thee Matthews (Thee.Matthews@usdoj.gov)

**AG** **ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

April 30, 2026

<mark>**The overnight lockbox address has changed as of February 11, 2026. After this date, any overnight mail must be sent to the new address. Please update your records accordingly.**</mark>

US DOJ/CIV/OMP/OPBE
PO Box 600 Ben Franklin Station
Washington, DC 20044
opbe.civil@usdoj.gov

| | |
|---|---|
| AG Case No.: | 046643 |
| Invoice No.: | 1105264 |
| Taxpayer ID: | 04-2727260 |
| **Cost Center:** | **0361960306** |
| **Contract No.:** | **15JC1V25P000000545** |

**Re**      **Anaheim Gardens v. USA**

Current Billing:

| | | |
|---|---|---|
| Professional Hours | | 504.60 |
| Professional Services | $ | 354,537.00 |
| **Total Due and Payable - Current Billing in USD** | **$** | **354,537.00** |

| **Remit To:** | Wire Instructions: |
|---|---|
| Regular Mail: | Citizens Bank |
| Analysis Group#1 | Routing / ABA No.: 011500120 |
| PO Box 845512 | Account No.: 1130184460 |
| Boston, MA 02284-5512 | Swift Code: CTZIUS33 |
| | |
| Overnight Delivery: | Direct Deposit (EFT or ACH): |
| Analysis Group Inc - 845512 | Routing / ABA No.:211070175 |
| Attn: Lockbox Processing | Account No.: 1130184460 |
| 10 Dan Road | |
| Canton, MA 02021 | |
| | |
| **Please Send Remittance Email To:** | **Please Send Remittance Email To:** |
| AGReceivables@analysisgroup.com | AGReceivables@analysisgroup.com |

THIS INVOICE IS PAYABLE UPON RECEIPT
PLEASE RETURN THIS PAGE WITH YOUR REMITTANCE

A9

**AG** **ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

June 11, 2026

<mark>**The overnight lockbox address has changed as of February 11, 2026. After this date, any overnight mail must be sent to the new address. Please update your records accordingly.**</mark>

US DOJ/CIV/OMP/OPBE
PO Box 600 Ben Franklin Station
Washington, DC 20044
opbe.civil@usdoj.gov

| | |
|---|---|
| AG Case No.: | 046643 |
| Invoice No.: | 1107712 |
| Taxpayer ID: | 04-2727260 |
| **Cost Center:** | **0361960306** |
| **Contract No.:** | **15JC1V25P000000545** |

**Re**       **Anaheim Gardens v. USA**

For professional services rendered and expenses incurred in connection with the above referenced case for the period April 01, 2026 to May 31, 2026, including:

- April 1, 2025 hearing attendance and preparations;
- Preparation of supplemental rebuttal expert report;
- Expert deposition and associated preparation;
- Assistance with deposition and preparation for deposition of Dr. Roulac;
- Finalization of supplemental rebuttal report analyses and production materials;
- Review and analysis of Dr. Roulac's production materials and rebuttal report;
- Assistance with Daubert motion and response to Plaintiffs' reply; and
- Communication with expert and counsel.

Current Billing:

| | | |
|---|---|---|
| Professional Hours | | 1,246.20 |
| Professional Services | $ | 864,053.00 |
| Total Expenses | $ | 5,918.37 |
| **Total Due and Payable - Current Billing in USD** | **$** | **869,971.37** |

**AG** **ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

June 11, 2026

<mark>**The overnight lockbox address has changed as of February 11, 2026. After this date, any overnight mail must be sent to the new address. Please update your records accordingly.**</mark>

US DOJ/CIV/OMP/OPBE
PO Box 600 Ben Franklin Station
Washington, DC 20044
opbe.civil@usdoj.gov

| | |
|---|---|
| AG Case No.: | 046643 |
| Invoice No.: | 1107712 |
| Taxpayer ID: | 04-2727260 |
| **Cost Center:** | **0361960306** |
| **Contract No.:** | **15JC1V25P000000545** |

**Re**      <u>**Anaheim Gardens v. USA**</u>

<u>Current Billing:</u>

| | | |
|---|---|---:|
| Professional Hours | | 1,246.20 |
| Professional Services | $ | 864,053.00 |
| Total Expenses | $ | 5,918.37 |
| **Total Due and Payable - Current Billing in USD** | **$** | <u>**869,971.37**</u> |

| **Remit To:** | Wire Instructions: |
|---|---|
| Regular Mail: | Citizens Bank |
| Analysis Group#1 | Routing / ABA No.: 011500120 |
| PO Box 845512 | Account No.: 1130184460 |
| Boston, MA 02284-5512 | Swift Code: CTZIUS33 |
| | |
| Overnight Delivery: | Direct Deposit (EFT or ACH): |
| Analysis Group Inc - 845512 | Routing / ABA No.:211070175 |
| Attn: Lockbox Processing | Account No.: 1130184460 |
| 10 Dan Road | |
| Canton, MA 02021 | |
| | |
| **Please Send Remittance Email To:** | **Please Send Remittance Email To:** |
| AGReceivables@analysisgroup.com | AGReceivables@analysisgroup.com |

THIS INVOICE IS PAYABLE UPON RECEIPT
PLEASE RETURN THIS PAGE WITH YOUR REMITTANCE

**AG | ANALYSIS GROUP**

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

July 13, 2026

US DOJ/CIV/OMP/OPBE
PO Box 600 Ben Franklin Station
Washington, DC 20044
opbe.civil@usdoj.gov

| | |
|---|---|
| AG Case No.: | 046643 |
| Invoice No.: | 1109357 |
| Taxpayer ID: | 04-2727260 |
| **PO Number:** | **0361960306** |
| **Contract No.:** | **15JC1V25P000000545** |

**Re       Anaheim Gardens v. USA**

For professional services rendered and expenses incurred in connection with the above referenced case for the period June 01, 2026 to June 30, 2026, including:

- Review and analysis of Plaintiffs' expert reports, backup materials, and deposition transcripts;
- Daubert motion hearing attendance and preparations; and
- Communications with counsel and expert

Current Billing:

| | | |
|---|---|---|
| Professional Hours | | 44.25 |
| Professional Services | $ | 40,382.50 |
| Total Expenses | $ | 4,082.96 |
| **Total Due and Payable - Current Billing in USD** | **$** | **44,465.46** |

SUMMARY OF PRIOR BILLINGS THAT REMAIN UNPAID

| 0 - 30 Days | 31 - 60 Days | 61 - 90 Days | 91 - 120 Days | Over 120 Days | Total |
|---|---|---|---|---|---|
| $0.00 | $869,971.37 | $354,537.00 | $0.00 | $0.00 | $1,224,508.37 |

cc:     Bondurant Eley (Bondurant.Eley@usdoj.gov)
        Thee Matthews (Thee.Matthews@usdoj.gov)

A12

# AG | ANALYSIS GROUP

Main 1 617 425 8000   Fax 1 617 425 8001   AnalysisGroup.com

111 Huntington Avenue   14th Floor   Boston, MA   02199

July 13, 2026

US DOJ/CIV/OMP/OPBE
PO Box 600 Ben Franklin Station
Washington, DC 20044
opbe.civil@usdoj.gov

| | |
|---|---|
| AG Case No.: | 046643 |
| Invoice No.: | 1109357 |
| Taxpayer ID: | 04-2727260 |
| **PO Number:** | **0361960306** |
| **Contract No.:** | **15JC1V25P000000545** |

**Re        Anaheim Gardens v. USA**

Current Billing:

| | | |
|---|---|---:|
| Professional Hours | | 44.25 |
| Professional Services | $ | 40,382.50 |
| Total Expenses | $ | 4,082.96 |
| **Total Due and Payable - Current Billing in USD** | **$** | **44,465.46** |

| **Remit To:** | Wire Instructions: |
|---|---|
| Regular Mail: | Citizens Bank |
| Analysis Group | Routing / ABA No.: 011500120 |
| PO Box 845512 | Account No.: 1130184460 |
| Boston, MA 02284-5512 | Swift Code: CTZIUS33 |
| | |
| Overnight Delivery: | Direct Deposit (EFT or ACH): |
| Analysis Group Inc - 845512 | Routing / ABA No.:211070175 |
| Attn: Lockbox Processing | Account No.: 1130184460 |
| 10 Dan Road | |
| Canton, MA 02021 | |
| | |
| **Please Send Remittance Email To:** | **Please Send Remittance Email To:** |
| AGReceivables@analysisgroup.com | AGReceivables@analysisgroup.com |

THIS INVOICE IS PAYABLE UPON RECEIPT
PLEASE RETURN THIS PAGE WITH YOUR REMITTANCE

A13

**IN THE UNITED STATES
COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ANAHEIM GARDENS, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA,<br><br><br>        Defendant. | No. 93-655C<br>(Judge Tapp) |
| ALGONQUIN HEIGHTS ASSOCIATES, L.P., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA<br><br><br>        Defendant. | No. 97-582C<br>(Judge Tapp) |

**EXPERT REBUTTAL REPORT OF TIMOTHY J. RIDDIOUGH**

February 20, 2026

A14

CONFIDENTIAL

option to later prepay and convert to market-rate mirrors the functionality of a zero-coupon bond, where the SWP purchases the bond and sacrifices current returns in exchange for a future payoff.[17]  Dr. Roulac then describes HUD as selling the bond, receiving the benefit of fulfilling its policy objective of providing affordable housing until the Prepayment Eligibility Date.[18]  Throughout this narrative, Dr. Roulac ignores the significant cash-based benefits in the form of annual distributions and tax loss offsets available to SWPs prior to the Prepayment Eligibility Dates, which make these investments lack any resemblance to zero-coupon bonds.

## III.    LIMITATIONS

18.  My experience and practice as an expert witness is that when quantitative analyses are presented in my reports, I produce the necessary calculations and workpapers along with my report submission to allow opposing experts to fully replicate my results.  My understanding is that this is accepted practice for expert witnesses, as it is for academics.  In the Riddiough SWP Affirmative Report, for instance, I included a 613 page appendix to detail my calculations of Economic Impact and Just Compensation for each property, complemented by 63 Excel files produced to demonstrate the underlying calculations.  However, Dr. Roulac's production in support of the Roulac Report, falls far short of the standard of general expert witness practices as I understand them.  As a result, it has limited my ability to fully replicate and assess all aspects of his analyses.  As explained above, I was able to identify fundamental flaws in many of the basic inputs into his Economic Impact and Just Compensation equations that in and of themselves render his opinions unreliable, but I reserve the right to supplement that analysis once I have had an opportunity to assess all recent and future productions from Dr. Roulac.

19.  Below I, i) provide a timeline and process of my rebuttal expert analysis, ii) document materials that remain missing from Dr. Roulac's backup materials as of the time of this

---

[17]    Roulac Report, 4:267-268 (The property owners "purchased" a zero-coupon bond by "sacrifice[ing] current returns in exchange for the right to receive substantial amounts after some extended duration.").

[18]    Roulac Report, 4:279-280 (In exchange, HUD, as the zero-coupon bond issuer, received "a 20-year affordable housing leasehold, operated by Plaintiffs, with the full rights to the property being returned to Plaintiffs in 20 years.").

**CONFIDENTIAL**

report submission, and iii) discuss the limitations to my current rebuttal analysis given Dr. Roulac's incomplete production. As noted above, it is my understanding that the SWPs produced additional materials from Dr. Roulac after 6 p.m. today. As this production has occurred mere hours before the deadline for submission of rebuttal expert reports, I am unable to assess that material, and reserve my right to do so in the future.

### A.    Timeline and Process for My Rebuttal Expert Analysis

20. On December 16, 2025, upon receiving Dr. Roulac's initial expert report, it was soon identified that no supporting materials were produced. Accordingly, Counsel requested that Dr. Roulac produce all supporting materials for his report.

21. The descriptions of Dr. Roulac's analysis included in his report, and for his DCF analyses in particular, were insufficient to understand how he arrived at his opinions of Economic Impact and Just Compensation. Although his initial report included an appendix that purported to explain his calculations, descriptions were missing and hard to follow. He also only included discussion of any substance for only one property, not all 63 SWP Properties. In order to understand his methodology and approach, his workpapers were necessary.

22. On December 23, 2025, Dr. Roulac made available (via Counsel) an initial production of backup materials, which included 447 files, consisting of 105 native Excel files, 340 PDF files, one word document, and one email document (with an extension ".eml").

23. After an initial review of these backup materials, 63 Excel files were identified that appeared to include Dr. Roulac's DCF analyses. Each Excel file contained eight tabs, with thousands of cells that included data, description, or calculations.

24. Upon further review, widespread discrepancies were identified between the results generated by the Excel models in rows 217-223 of each file's "NPV Model" tab and those reported in Exhibit 19 of Dr. Roulac's report. Additional review and analysis of these Excel models were conducted in great detail, along with a review of Dr. Roulac's report and other production materials, in efforts to explain these discrepancies. With no such explanation found in the existing materials, Dr. Roulac's stated opinions based on his DCF analyses

11

CONFIDENTIAL

were not only unsupported but also not understandable.[19]  In particular, if Dr. Roulac had intended to offer the measures shown for Economic Impact and Just Compensation reported in his Exhibit 19 as his opinions, I found no backup that matched those numbers, making it wholly unclear how such opinions were determined.  On the other hand, if Dr. Roulac's intent was to offer the measures provided in his initial backup materials as his opinions, it calls into question why his report does not correspond to them.

25.  This discrepancy and other deficiencies in Dr. Roulac's initial disclosures were communicated to Counsel and I understand that on February 3, 2026, Defendant's Counsel communicated issues with Dr. Roulac's report and subsequent disclosures to counsel for the SWPs.

26.  In parallel to the analytical work described above, which was largely devoted to understanding and attempting to reconcile discrepancies in Dr. Roulac's initial report and production, I began to form the opinions described in Section II above. In doing so, I also analyzed the impacts of adjusting certain flaws in Dr. Roulac's originally produced models.

27.  On February 13, 2026, approximately two months after the affirmative report deadline of December 15, 2025, and only one week before the filing deadline of this rebuttal report, Dr. Roulac provided a revised report and 82 new backup files.  The revised backup files included 63 new DCF model files, which appear to replace those originally produced that I had analyzed.[20]

28.  The resulting Economic Impact and Just Compensation measures provided through Dr. Roulac's newly produced DCF models vary substantially from those produced in December. Based on the review over the past seven days since receiving this new production, the primary reason for the differences in Dr. Roulac's two versions of the DCF models is his

---

[19]    Although, as I discuss above, Dr. Roulac offers a second method for Economic Impact in his "option value" analysis, I find that method to be wholly defective and failing to demonstrate Economic Impact.  My analysis of Dr. Roulac's "option value" analysis also depends on my assessment of his DCF analyses, given Dr. Roulac's claim that both methods corroborate his Economic Impact opinions.  Thus, a full assessment of Dr. Roulac's "option value" analysis requires an adequate understanding of his DCF analyses, which, as I describe herein, cannot be obtained through Dr. Roulac's deficient disclosures.

[20]    I note that if these materials were part of Dr. Roulac's opinions formed through the affirmative report deadline of December 15, 2025, it is unclear what caused the delay in the production of such materials because they should have already been prepared in advance of that deadline.

12

CONFIDENTIAL

incorporation of a rent "Enhancement Factor" that is now applied across all 63 SWP Properties in his newly produced models. In prior disclosure, he had only included this feature for five SWP Properties.

29. Additional documentation produced on February 13, 2025, along with at least 34 pages in his revised expert report that were not included in his original report,[21] are devoted to describing and purportedly supporting his calculations for this rent "Enhancement Factor." However, the detail supporting his rent "Enhancement Factors" continue to be insufficient, as I describe below.

### B. Documents Missing from Dr. Roulac's Backup Materials[22]

30.  The documents produced by Dr. Roulac on February 13, 2026, included 82 additional spreadsheets in support of his revised report. Most of these spreadsheets contain multiple tabs and hundreds of line items and formulas that needed to be reviewed. Yet, after an initial review of these documents and his revised report, I realized that Dr. Roulac's backup material was still missing various important documents in support of his assumptions and calculations, in particular those related to his rent "Enhancement Factor."

31. Notably, Dr. Roulac references at least 22 documents in support for his calculations of the rent "Enhancement Factor,"[23] but has so far only provided backup for only 10 of those 22 documents in his backup materials.[24] The table below lists the 22 documents referenced by Dr. Roulac in his revised report, and notes whether they are missing from the backup materials that Dr. Roulac produced through February 13, 2026.

---

[21]    Roulac Report, 16-32, 51-67.

[22]    This discussion is pending my review of the additional materials produced on February 20, 2026.

[23]    Roulac Report, 27.

[24]    One of the ten pertains to only one property (Suehar Apartments), with backup missing for all the remaining SWP Properties.

13

**CONFIDENTIAL**

| File Reference | Roulac Report Location (besides p. 27) | Status as of 2/13/2026 | Additional Notes |
|---|---|---|---|
| Summary Rent and Expenses | n/a | Received | |
| Ref 1.1.1 – Attribute.xlsx | pp. 30, 32, 56 | Received | "Reference SS 1.1.1" is also cited on pp. 31, 54-55, 57. |
| Ref 1.1.1A – Historical Attribute Density 1988–2025_100 Centre Street.docx | pp. 16, 58 | Missing | |
| Ref 1.1.1A – Expense Factors.xlsx | pp. 16, 58 | Received | |
| Ref 1.1.1A – Rent Revenue Summary Factors.xlsx | pp. 16, 58 | Received | |
| Ref 1.1.2 – WBT Scores Property vs. Submarket.xlsx | pp. 28, 52 | Received | |
| Ref 1.1.2A – WBT for 37 Years.xlsx | pp. 29, 53 | Received | |
| Ref 1.1.2A – Estimated Historical WBT Scores.docx | pp. 29, 53 | Missing | |
| Ref 1.1.3 – Property vs. Submarket Features Summary.xlsx | pp. 17, 59 | Received | |
| Ref 1.1.3 – Revenue Impact for Property Features by Component Contribution 2-9.xls | pp. 17, 59 | Missing | |
| Ref 1.1.3 – Property Features Scoring Model.docx | pp. 17, 59 | Missing | |
| Ref 1.1.4 – Business Continuity, Experience, and Competence.xlsx | pp. 21, 63 | Received | |
| Ref 1.1.4 – Business Experience Competence_and_Continuity_Advantage_Expanded.docx | pp. 21, 63 | Missing | |
| Ref 1.1.5 – Rent Change Based on SF.xlsx | pp. 18, 60 | Received | |
| Ref 1.1.6 – Balance Imbalance Final.docx | pp. 19-20, 61-62 | Missing | |
| Ref 1.1.6 – Balance Imbalance Suehar Apartments | pp. 19-20, 61-62 | Received* | *Produced for one property only (Suehar Apartments) |
| Ref 1.2.1 – Property Expense Features.xls | pp. 22, 64 | Missing | |
| Ref 1.2.2 – Business Experience Competence_and_Continuity_Advantage_Expanded.doc | pp. 23, 65 | Missing | |
| Ref 1.2.2 – Business Continuity, Experience, and Competence.xlsx | pp. 23, 65 | Missing | |
| Ref 1.2.3 – Perform Outperform Model Factors for Expense Factors | pp. 25-26, 67 | Missing | |
| Ref 1.3 – Perform Outperform Model Formulas.docx | pp. 24, 66 | Missing | |
| Ref 1.3 – Perform Outperform Model Formulas.doc | p. 66 | Missing | |

14

A19

**CONFIDENTIAL**

32. Because Dr. Roulac does not clearly articulate the methodology used to calculate his rent "Enhancement Factor," I cannot, in the absence of complete supporting materials, fully replicate these factors and evaluate the reasonableness of his assumptions nor the reliability of his calculations. With the materials produced through February 13, 2026, Dr. Roulac's assumptions related to the calculation of his rent "Enhancement Factor" are entirely unsupported.

33. I have informed Counsel of these additional missing documents, and understand that on February 18, 2026, Counsel requested that these files be produced by Dr. Roulac. .

34. I also note that there is no guarantee that the 22 documents referenced in the Roulac Report would, if produced, provide full support for his assumptions and calculations. Upon additional review of Dr. Roulac's disclosures relevant to his rent "Enhancement Factor," I have identified various unsupported assumptions, included in the table below. While some of these may be addressed through the contents of the above missing documents, others may not.

| Enhancement Factor Component | Description |
| --- | --- |
| Rent Factor 1: Square Footage ("SF") | **Ref 1.1.5:** Dr. Roulac appears to estimate this factor using linear regressions models. However, it appears that Dr. Roulac did not produce details regarding how these linear regression models were estimated. |
| Rent Factor 2: Property Features | **Ref 1.1.3:** It appears that Dr. Roulac has not produced an explanation of how the property features (e.g., presence of an elevator) are associated with a score from -10 to +10 as described in his report (Revised Roulac Report, p. 59).<br><br>It also appears that Dr. Roulac has not produced an explanation of how the property features are translated into this enhancement factor component, which is a single number. |
| Rent Factor 3: Attributes | **Ref. 1.1.1:** It appears that that Dr. Roulac has not produced any mapping or model of how his attribute scores measured as of 2025 are extrapolated to prior years (i.e., 1988 to 2024). |
| Rent Factor 4: Walk-Bike-Transit ("WBT") | **Ref 1.1.2:** Dr. Roulac calculates this factor using an algebraic formula. It appears that Dr. Roulac has not produced the calculations for how the coefficients of this formula are derived.<br><br>Furthermore, it appears that Dr. Roulac has not produced any mapping or model of how walk-bike-transit scores measured as of 2025 are extrapolated to prior years. |

15

| | |
|---|---|
| Rent Factor 5: Balance / Imbalance | **Ref. 1.1.6.:** It appears that Dr. Roulac has not produced calculations of this factor component for Suehar Apartments in all years between 1988 to 2024.  Specifically, for Suehar Apartments, calculations have only been provided for years 2000, 2010, 2020, and 2025.  No calculation has been provided for any of the other 62 properties for any year between 1988 and 2025. |
| Rent Factor 6: Management ("MGT") | **Ref 1.1.4:** It appears that Dr. Roulac has not produced the calculation showing how the exact factor components are derived from 1988 to 2025. |
| Occupancy Factor 1: Property Features | **Ref 1.3:** Dr. Roulac calculates this factor using an algebraic formula. It appears that Dr. Roulac has not produced the calculations for how the coefficient of this formula is derived. |
| Occupancy Factor 2: Balance / Imbalance | **Ref 1.3:** Dr. Roulac calculates this factor using an algebraic formula. It appears that Dr. Roulac has not produced the calculations for how the coefficient of this formula is derived. |
| Occupancy Factor 3: MGT | **Ref 1.3:** Dr. Roulac calculates this factor using an algebraic formula. It appears that Dr. Roulac has not produced the calculations for how the coefficient of this formula is derived. |
| Expenses Factor 1: Property Features | **Ref 1.1.3:** It appears that Dr. Roulac has not produced an explanation of how the property features (e.g., presence of an elevator) are associated with a score from -10 to +10 as described in his report (Revised Roulac Report, p. 22).<br><br>Furthermore, it appears that Dr. Roulac has not produced an explanation of how the property features are translated into this rent "Enhancement Factor" component, which is a single number. |
| Expenses Factor 2: MGT | **Ref. 1.2.2:** It appears that Dr. Roulac has not produced calculations showing how this factor component was derived for years 1988 to 2025. |
| Expenses Factor 3: Factors Impact | **Ref 1.2.3:** Dr. Roulac calculates this factor using an algebraic formula. It appears that Dr. Roulac has not produced the calculations for how the coefficients of this formula are derived. |

35. I reserve the right to request additional information that may be necessary to fully replicate and evaluate his assumptions and calculations.

### C.    Limitations to My Rebuttal Analysis

36. Dr. Roulac's untimely, incomplete, inconsistent and error-prone production of supporting materials has limited my ability to fully replicate and sufficiently analyze his results.  This has, in turn, limited my ability to provide detailed rebuttal to all of the assumptions and calculations that purportedly support his measures of Economic Impact and Just

16

A21

**CONFIDENTIAL**

Compensation.  While I have been able to formulate several conceptual critiques of Dr. Roulac's methodology, as described in Section II above, the lack of a complete set of supporting materials, calculations, and analytical formulas prevents me from being able to fully evaluate and adjust the extent of Dr. Roulac's errors and inconsistencies contained in his analysis.

37. I reserve the right to supplement this report with finalized quantitative results upon receiving the complete backup materials underlying the Roulac Report.

Submitted by:

Timothy J. Riddiough

February 20, 2026

17